UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.                                    CASE No. 8:03-CV-1895-T-23TGW

VIATICAL CAPITAL, INC., et. al.,

        Defendants.

## REPORT AND RECOMMENDATION

The issue in this case involving viatical settlements is whether three settlement agreements entered into by the Receiver should be approved.

David M. Levine has been appointed the Receiver. Subsequently, he filed claims against certain defendants in two other cases (8:04-CV-2227-T-30TGW and 8:04-CV-1164-T-24EAJ). The Receiver thereafter entered into settlement agreements with Stanley A. Goldsmith in case 8:04-CV-2227-T-30TGW, and with Walter Shacklett and Robert Richardson in case 8:04-CV-1164-T-24EAJ. The Receiver has now moved to have those settlement agreements approved (Docs. 333, 334, 346).

The motions were referred to me for a report and recommendation (Docs. 335, 336, 345). A hearing was then conducted to determine whether the settlements should be approved. Because each of the settlements is fair, I recommend that they be approved.

As indicated by the Receiver, a settlement should be approved when (1) the receiver is independent; (2) he acted in good faith; (3) he conducted an adequate investigation; and (4) the settlement is fair. Sterling v. Stewart, 158 F.3d 1199, 1203 (11th Cir. 1998). There is no dispute about the first three requirements.

Consequently, the only issue is whether the settlements are fair. As noted by the Receiver, the considerations for this factor are: (1) the likelihood of success; (2) the range of possible discovery; (3) the point on or below the range of discovery at which settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was received. Id. at 1203-04 n.6 (citing Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984)).

The Receiver and Goldsmith entered into a settlement under which Goldsmith was to pay $325,000. The Receiver's suit against

Goldsmith claimed legal malpractice, negligence and breach of fiduciary duty (Doc. 1, 8:04-CV-2227-T-30TGW). In essence, the Receiver alleged that Goldsmith failed to inform the LLCs that they would not be receiving a title interest in the policies and that he had a conflict of interest in representing the sellers and the buyers in the transactions. It is the Receiver's position that, if the LLCs had known that they were not going to own the policies, they would not have invested money in the policies. It should be noted that the Receiver had to limit his suit to these claims because a claim of fraud would not be covered under Goldsmith's legal malpractice insurance.

      The Receiver recognizes that there are significant legal issues that may prevent him from recovering damages if the case proceeds to trial. A threshold issue the Receiver must overcome is that he would have to prove that Goldsmith was the attorney for each of the thirty-five LLCs. The Receiver also identified issues that could defeat or reduce recovery on the merits.

      Further, Goldsmith's legal malpractice insurance has coverage of $500,000 per occurrence with a one million dollar limit. Pertinent language

from the policy indicates that the Receiver would have a difficult time proving that Goldsmith's actions constituted more than a single occurrence.

Goldsmith's attorney represented at the hearing that he would argue that Goldsmith was not the attorney for the LLCs. He also would contend at a trial that Goldsmith's legal advice to the LLCs would have made no difference with respect to purchases of insurance policies because, as the SEC has contended throughout, Douglas York and Robert Coyne controlled the purchasing decisions, rather than the LLCs' executive committees, to whom Goldsmith might have given advice. In addition, Goldsmith's counsel would assert that the matter involved a single occurrence and would raise a credible statute of limitations defense.

Importantly, under Goldsmith's insurance policy, any legal expense over $125,000 would reduce the amount that could be recovered. In this respect, both sides believe that, if the case proceeds to trial, it would cost each side one million dollars in legal expenses. Consequently, even if the Receiver succeeds at trial, the investors would recover no money. Therefore, the Receiver, instead of spending that money for litigation expenses, prefers that the money go to the investors.

Accordingly, the Receiver believes that $325,000 is a fair settlement. At the hearing, the SEC stated it was originally in agreement with the settlement figure, but, after learning about the difficulties in the case, it is even more convinced that it is a fair settlement amount.

As for Goldsmith's financial situation, the Receiver made an inquiry of that matter and obtained a financial statement. He is satisfied that Goldsmith does not have non-exempt assets above $325,000. At the hearing, Goldsmith's attorney confirmed that Goldsmith is not a very good candidate for providing funds above the settlement amount. Thus, Goldsmith is a solo practioner and essentially owns only his homestead property. Furthermore, he has significant credit card debt of approximately $45,000 to $50,000.

Based upon these circumstances, it appears appropriate to approve the Receiver's settlement with Goldsmith in the amount of $325,000.

The Receiver settled with Shacklett in the amount of $45,000 and Richardson in the amount of $10,000. Shacklett was the marketing director for VCI and Richardson was a broker. The Receiver in the complaint asserted claims against Shacklett and Richardson for receiving fraudulent transfers of commissions and for unjust enrichment (Doc. 1, pp.

14-15, ¶¶ 52-65; pp. 40-41; ¶¶ 262-275, in 8:04-cv-1164-T-24EAJ). Shacklett allegedly received over $137,000 in commissions from the policies (id. at p. 4, ¶13) and Richardson received over $100,000 in commissions (id. at p. 7, ¶28).

At the hearing, the Receiver indicated that, after spending a half day in mediation with Shacklett, the Receiver was extremely pleased with the settlement amount that was achieved. However, the details of the settlement could not be discussed due to confidentiality of the mediation. Significantly, the SEC is also in agreement with the settlement amount with Shacklett. Therefore, I am recommending that the Receiver's settlement with Shacklett in the amount of $45,000 be accepted.

At the hearing, the Receiver represented that Richardson is the one who proposed the $10,000 settlement figure. Richardson, ill with cancer, has modest means and had to borrow the money for the settlement. Notably, there is no indication that a greater amount could be obtained from him and this amount is being recovered without the expense of trial. The SEC stated that it also is in agreement with this settlement amount. Accordingly, I recommend that this settlement be accepted.

For the foregoing reasons, I recommend that the Receiver's Amended Motion for Authority to Enter into Settlement and Release Agreement with Walter Shacklett in Case No. 8:04-CV-1164-T-24EAJ (Doc. 333), Receiver's Amendment Motion for Authority to Enter into Settlement and Release Agreement with Stanley A. Goldsmith in Case No. 8:04-CV-2227-T-30TGW (Doc. 334) and Receiver's Amended Motion for Authority to Enter into Settlement and Release Agreement with Robert Richardson in Case No. 8:04-CV-1164-T-24EAJ and Incorporated Memorandum of Law (Doc. 346) be granted and that the suggested settlement amounts be accepted. I also recommend that the Receiver's Motion for Authority to Enter into Settlement and Release Agreement with Robert Richardson in Case No. 8:04-CV-1164-T-24EAJ (Doc. 342) be denied as moot.

            Respectfully submitted,

DATED: OCT. 21, 2005

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its

service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).